RECORDER'S COURT OF DETROIT v CITY OF DETROIT

Docket No. 67116. Submitted October 19, 1983, at Detroit.—Decided
April 30, 1984. Leave to appeal applied for.

Recorder's Court of Detroit brought an action in the Wayne
Circuit Court against the City of Detroit for an injunction
preventing the city from closing the Detroit House of Correc-
tion. The County of Wayne was permitted to intervene as a
plaintiff and the Department of Corrections was added as a
necessary party plaintiff. The court, Theodore R. Bohn, J.,
acting for John M. Wise, J., granted summary judgment for
defendant and an order restraining defendant from closing the
facility pending an appeal. Wayne County appealed. *Held:*

The City of Detroit may close the Detroit House of Correction
when it has no agreement to take custody of any committed
persons. The agreement required by statute is a written agree-
ment. Since there was no agreement between the city and the
county, summary judgment was properly granted.

Affirmed.

1. STATUTES — JUDICIAL CONSTRUCTION — TITLE OF STATUTE.

Recourse to the title of a statute is permissible only to resolve
ambiguity in the body of the statute or where there has been a
clear error in omitting material from the body of the statute.

2. PRISONS AND PRISONERS — DETROIT HOUSE OF CORRECTION.

The City of Detroit may close the Detroit House of Correction
when it has no agreement to take custody of any committed
persons.

3. JUDGMENT — SUMMARY JUDGMENT — ISSUE OF MATERIAL FACT —
COURT RULES.

Summary judgment for the reason that there is no genuine issue
of material fact should be granted where the affidavits, plead-

REFERENCES FOR POINTS IN HEADNOTES
[1] 73 Am Jur 2d, Statutes § 98.
[2] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
Political Subdivisions § 207.
60 Am Jur 2d, Penal and Correctional Institutions §§ 3, 5.
[3] 73 Am Jur 2d, Summary Judgment §§ 26, 27.

ings, depositions and documentary evidence filed with the court show no evidentiary support for the nonmoving party's allegations (GCR 1963, 117.2[3]).

*George H. Cross,* Corporation Counsel, *Edward L. Douglas,* Acting Deputy Corporation Counsel, and *Douglas B. Dimitry,* Principal Attorney, for County of Wayne.

*Donald Pailen,* Corporate Counsel, *Mark R. Ulicny,* Deputy Corporate Counsel, and *Kay D. Schloff* and *Harnetha Williams-Jarrett,* Assistant Corporation Counsels, for City of Detroit.

Before: V. J. BRENNAN, P.J., and CYNAR and C. W. SIMON,* JJ.

C. W. SIMON, J. In this action Wayne County seeks an injunction preventing the City of Detroit from closing the Detroit House of Correction, while the city seeks an order of mandamus requiring the county to assume custody of certain persons convicted in the county. The circuit judge granted summary judgment for the city and issued an order containing the following holding:

"The court finds that the statutory responsibility for the housing of the convicted misdemeanants and ordinance violators in the County of Wayne is that of said County, subject to appropriate reimbursements; that the City of Detroit is not mandated by law to continue the operation of the Detroit House of Correction in perpetuity regardless of changing conditions and the fact that 95 percent of the inmates at the facility are not the responsibility of that City."

The county appeals as of right. The circuit court

---

* Circuit judge, sitting on the Court of Appeals by assignment.

failed to specify the grounds on which summary judgment was granted and, although the parties agree that the city filed a motion for summary judgment and the county filed a response, the confused circuit court files contain no such documents. Because the county argues on appeal that issues of fact existed which should have precluded summary judgment, we will assume that summary judgment was entered pursuant to GCR 1963, 117.2(3) on the grounds that there was no genuine issue as to any material fact and that the city was entitled to prevail as a matter of law.

A county is required to maintain a jail. MCL 45.16; MSA 5.291. The county jails are to be used as prisons for detention of persons awaiting trial and for the confinement of persons sentenced upon conviction of an offense or committed for any cause authorized by law. MCL 801.1; MSA 28.1721. Villages and cities may use the county jail to confine persons convicted of ordinance violations, MCL 66.8, 90.8; MSA 5.1278, 5.1729, although the county must be compensated by the villages and cities for the expenses of such confinement, *People ex rel Mixer v Bd of Supervisors of Manistee County,* 26 Mich 422 (1873). Persons convicted of a crime or contempt of court who receive sentences of imprisonment for one year or less must be confined in a county jail or in the Detroit House of Correction. MCL 769.28; MSA 28.1097(1). Confinement in the House of Correction is the legal equivalent of confinement in a county jail. *Elliott v People,* 13 Mich 365 (1865).

The statute governing the House of Correction, MCL 802.1 *et seq.;* MSA 28.1811 *et seq.,* was first enacted by 1861 PA 164. The origin of the statute was explained in *Detroit v Laughna,* 34 Mich 403, 404-405 (1876):

"The city, indeed, built the prison, and has an interest in its finances, as it is responsible to a certain degree for its expenses; but after the house was built under provisions of the city charter, which may or may not have been legally sufficient to provide for its future management, the legislature, either discovering defects, or, more probably, recognizing the manifest impropriety of allowing a prison to be managed by a city council, passed a statute which removed any doubt concerning the legal position of that establishment."

See also *Detroit v Bd of Water Comm'rs,* 108 Mich 494; 66 NW 377 (1896), and *Green v Dep't of Corrections,* 30 Mich App 648; 186 NW2d 792 (1971), *aff'd* 386 Mich 459; 192 NW2d 491 (1971). The language employed in MCL 802.1; MSA 28.1811 shows that the statute merely recognized the existence of the House of Correction and provided for its future management:

"That the building erected for that purpose by the city of Detroit, shall be known and recognized as the 'Detroit house of correction' and shall be used for the confinement, punishment and reformation of criminals or persons sentenced thereto, under the provisions of this act, or any law of this state authorizing the confinement of convicted persons in said house of correction."

There is no language in the statute mandating the continued existence of the House of Correction. The county has pointed to the title of 1861 PA 164:

"An Act to *establish* the Detroit house of correction and authorize the confinement of convicted persons and persons awaiting trial or sentence." (Emphasis added.)

However, the title is not part of the statute; reliance on a title for purposes of statutory construction is permissible only to resolve ambiguity

in the body of the statute or where there has been a clear error in omitting material from the body of the statute. *People v Jaboro,* 76 Mich App 8; 258 NW2d 60 (1977). In *Bankhead v Mayor of River Rouge,* 387 Mich 610, 614-615; 198 NW2d 414 (1972), the Court explained that the title may be used to limit but not expand the scope of the statute. Reliance on the word "establish" in the title of 1861 PA 164 to conclude that the continuing existence of the House of Correction is mandated would expand the scope of the statute and would be inconsistent with other language in the body of the statute.

The statute commits the power to perform most management functions for the House of Correction to a board of inspectors, MCL 802.2; MSA 28.1812; however, certain powers are reserved to the city. One of those reserved powers is to make agreements to take custody of certain persons. See MCL 802.8; MSA 28.1818 (with any organized county for custody of persons sentenced to confinement for not less than 60 days), MCL 802.8a; MSA 28.1818(1) (with any county having a population of 500,000 or more for custody of persons awaiting trial or sentence), MCL 802.11; MSA 28.1821 (with inspectors of the state prison for custody of certain state prisoners), and MCL 802.16; MSA 28.1826 (with Wayne County for custody of convicted persons who would otherwise be confined in the county jail). Absent such an agreement, persons may not be committed to the House of Correction. *Dorsey v People,* 37 Mich 382 (1877); see also MCL 802.9, 802.17; MSA 28.1819, 28.1827.

Courts will presume that the Legislature did not intend to do a useless thing, if a statute can be reasonably construed to avoid such a consequence. *Brown v Dep't of State,* 45 Mich App 322, 326; 206 NW2d 481 (1973). The Legislature could not have

intended to require that an empty House of Correction remain open. Because persons can only be committed to the House of Correction pursuant to an agreement with the city, the city may close the House of Correction if it has no agreement to take custody of any committed persons.

The county, however, relies on two 19th century cases to argue that it may commit persons to the House of Correction even without an agreement. In *Wesley v People*, 37 Mich 384, 384-385 (1877), the Court held:

"Without attempting to review all the legislation pertaining or referring to the Detroit House of Correction which may be found in the charter of the city of Detroit we are of opinion that section 8160 of the Compiled Laws [the predecessor of MCL 802.16; MSA 28.1826] clearly authorizes the recorder to sentence such convicts to the House of Correction, and that no contract is necessary such as is required by section 8155 of Compiled Laws [now MCL 802.11; MSA 28.1821]. As to the county of Wayne, the House of Correction is made the place of imprisonment for county jail offenses, and must be treated to that extent as if it were the county jail."

In *Detroit v Wayne County Bd of Auditors*, 43 Mich 169, 170-171; 5 NW 77 (1880), the Court referred to *Wesley v People* and stated:

"[I]t was held that the House of Correction must for certain offenses be treated as if it were the jail of Wayne county, and that the Recorder of the city of Detroit had authority to sentence convicts to the House of Correction, and that no contract was necessary with the county as a condition precedent to such right.

"The legislation relating to this subject in no way interferes with the right of the board of auditors of Wayne county to adjust claims against their county, or

places that county in this respect upon a footing essentially different from other counties in the State."

However, the county's reliance on these cases is based on a misunderstanding of the legislative history. Section 16 and 17 of 1861 PA 164, now MCL 802.16, 802.17; MSA 28.1826, 28.1827, originally read as follows:

"Sec. 16. Immediately after filing the certificate of completion as aforesaid, the said inspectors shall cause a copy thereof to be published in at least three newspapers published in said county, and thereafter it shall be the duty of every court or magistrate in the said county of Wayne, authorized by law to sentence or commit any person to the county jail of said county as vagrants, common drunkards, disorderly persons, common prostitutes, or for assault and battery, petit larceny, or other offenses punishable by imprisonment in the county jail, or by virtue of any final sentence of conviction, except for contempt, to sentence such person to be confined in the said house of correction, there to be received, kept and employed according to law, under the rules and regulations of said house of correction; and it shall be the duty of all officers having the execution of the final process of any court or magistrate sentencing convicted persons to said house of correction, to cause such convicts to be conveyed forthwith to said house of correction, and such officer or officers shall be paid therefor the fees allowed by law for conveying persons to the county jail; but this section shall not apply to those juvenile offenders, who, by law, may be sent to the reform school at Lansing.

"Sec. 17. It shall be lawful for any justice of the peace, police justice or other magistrate having jurisdiction thereof, in the county of Wayne, or in any other county having an agreement with the city of Detroit for the confinement and maintenance of convicted persons in said house of correction, in all cases of complaints for vagrancy, to commit any person except such juvenile offenders as are mentioned in the last preceding section, convicted on such complaint before such justice or

magistrate, to said house of correction for a term not exceeding six months."

By 1879 PA 98, §§ 16 and 17 were amended and a new § 21, now MCL 802.21; MSA 28.1830, was added. The language of these sections has remained unchanged until the present:

"Sec. 16. The board of auditors for the county of Wayne shall have full power and authority to enter into an agreement with the common council of the city of Detroit, or with any authorized agent or officer in behalf of said city, to receive and keep in the Detroit house of correction any person or persons who may be sentenced to confinement in said house of correction by any court or magistrate in said county of Wayne, for the offenses in this section hereafter mentioned. Whenever such agreement shall have been made, it shall be the duty of the board of auditors for said county to give public notice, in some newspaper published within said county, for a period of not less than four weeks, and such notice shall state the period of time that such agreement will remain in force. Upon the making of such agreement, it shall be the duty of every court or magistrate in the said county of Wayne, authorized by law to sentence, or commit any person to the county jail of said county as vagrants, common drunkards, disorderly persons, common prostitutes, or for assault and battery, petit larceny or other offenses punishable by imprisonment in the county jail, or by virtue of any final sentence or conviction, except for contempt, to sentence such person to be confined in the said house of correction, there to be received, kept and employed according to law, under the rules and regulations of said house of correction. And it shall be the duty of all officers having the execution of the final process of any court or magistrate sentencing convicted persons to said house of correction, to cause such convicts to be conveyed forthwith to said house of correction, and such officer or officers shall be paid therefor the fees allowed by law for conveying persons to the county jail; but this

section shall not apply to those juvenile offenders who by law may be sent to the reform school at Lansing.

"Sec. 17. It shall be lawful for any justice of the peace, police justice or other magistrate having jurisdiction thereof, in the county of Wayne (when such agreement shall have been made), or in any other county having an agreement with the authorities of the city of Detroit for the confinement and maintenance of convicted persons in said house of correction, in all cases of complaints for vagrancy, to commit any person, except such juvenile offenders as are mentioned in the last preceding section, convicted on such complaint before such justice or magistrate, to said house of correction, for a term not exceeding six months.

\* \* \*

"Sec. 21. The board of auditors of the county of Wayne and the common council of the city of Detroit shall have full power and authority to settle and adjust, on such terms as shall be agreed upon, any and all claims or demands of the city of Detroit against the said county of Wayne for the board and expense of keeping convicted persons in the Detroit house of correction, committed thereto by any officer or magistrate in said county of Wayne, within or without the limits of said city of Detroit, at any time prior to the time this act shall take effect."

*Wesley v People* and *Detroit v Wayne County Bd of Auditors* were clearly based on the language of the statute as it existed before the 1879 amendment. We note that the latter case, although decided in 1880, involved claims for past maintenance of prisoners. The 1879 amendment of the statute demonstrates the legislative intent that the city not be responsible for Wayne County prisoners absent an agreement with Wayne County.

A motion for summary judgment pursuant to GCR 1963, 117.2(3) should be granted only if the affidavits, pleadings, depositions, and documentary

evidence filed with the court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. GCR 1963, 117.2(3). Such a motion should be granted if the nonmoving party is unable to provide any evidentiary support for its allegations. *Remes v Duby (After Remand),* 87 Mich App 534, 538; 274 NW2d 64 (1978). In its complaint and answer to the city's cross-complaint, the county pled the existence of an agreement. However, the lower court file contains an affidavit by the director of the House of Correction which states that no agreement with the county is currently in existence and that the last agreement shown by the city's records is dated February 1, 1920. Copies of that agreement are also contained in the record; they show an expiration date for the agreement of February 1, 1921. In its brief on appeal, the county candidly admits that it has no knowledge of any actual written agreement. No claim of an actual oral agreement is made; instead, the county suggests the existence of an implicit agreement. However, because MCL 802.16; MSA 28.1826 requires the county to publish notice of the existence of an agreement and its termination date, an implicit agreement would be insufficient.

The county asserts that other issues of fact exist; however, none of the issues to which the county points are material. On this record, the circuit judge did not err in granting summary judgment for the city.

We note that neither our decision nor that of the circuit court can be construed as requiring the county to assume a duty of maintaining the House of Correction. The county may satisfy its duties under the statutes previously mentioned by providing a county jail.

Affirmed.